CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
DEC 29 2010
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| PATRICIA A. BOYD, | Civil Action No. 5:10CV00055 |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | By: Hon. Glen E. Conrad<br>Chief United States District Judge |
| Defendant. | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 400 (1971).

The plaintiff, Patricia A. Boyd, was born on March 5, 1964 and eventually completed her high school education. Mrs. Boyd has worked as the owner/manager of a restaurant, receptionist, and stocker. The Administrative Law Judge found that plaintiff last worked on a gainful basis on February 1, 1995. On July 21, 2006, plaintiff filed applications for disability insurance benefits and supplemental security income benefits, with a protective filing date of June 26, 2006. In filing her

claims, plaintiff alleged that she became disabled for all forms of substantial gainful employment on February 1, 1995 due to a lower back injury. She now maintains that she has remained disabled to the present time. As to her application for disability insurance benefits, the record reveals that Mrs. Boyd met the insured status requirements of the Act through the third quarter of 2004, but not thereafter. See gen., 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before September 30, 2004. See gen., 42 U.S.C. § 423(a).

Mrs. Boyd's claims were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated August 13, 2008, the Law Judge also determined that plaintiff is not entitled to disability insurance benefits. The Law Judge found that Mrs. Boyd did not experience disability of requisite severity and duration at any time prior to termination of insured status. However, the Law Judge ruled that Mrs. Boyd had become disabled for all forms of substantial gainful employment by June 26, 2006, the protective filing date of her claim for supplemental security income benefits. As to plaintiff's application for disability insurance benefits, the Law Judge held that plaintiff suffered from a history of Pars defect at L4, history of herniated discs at L4-5 and L5-S1, and a low back syndrome at all relevant times covered by her application. The Law Judge determined that these musculoskeletal problems did not constitute a severe impairment within the meaning of 20 C.F.R. § 404.1521. Accordingly, the Law Judge concluded that Mrs. Boyd was not disabled for all forms of substantial gainful employment at any time during the period in which she still enjoyed insured status. See 20 C.F.R. § 404.1520(c). The Law Judge went on to find that, as of her protective filing date for supplemental security income benefits, Mrs. Boyd was disabled for all forms of substantial

gainful employment as a result of an L4-5 annular tear, L5-S1 disc protrusion, and degenerative disc disease of the lumbar spine. Accordingly, the Law Judge ruled that Mrs. Boyd was disabled for purposes of her application for supplemental income benefits.[1] In summary, the Law Judge found that Mrs. Boyd's back problems rendered her disabled for all forms of substantial gainful employment as of June 26, 2006, the date of her application for benefits, but that her back problems did not constitute a severe impairment at any time on or before September 30, 2004, the date of termination of insured status.

Mrs. Boyd appealed the denial of her claim for disability insurance benefits to the Social Security Administration's Appeals Council. However, the Appeals Council eventually adopted the Law Judge's opinion as the final decision of the Commissioner. Having exhausted all available administrative remedies, Mrs. Boyd has now appealed the denial of her claim for disability insurance benefits to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

---

[1] Under the supplemental security income benefit program, a claimant can receive benefits for a period beginning no earlier than the date of application. See 20 C.F.R. § 416.335.

Under 20 C.F.R. § 404.1520(c), it is provided that if a claimant does not suffer from a severe impairment, it must be determined that the claimant is not disabled for purposes of an application for disability insurance benefits, without consideration of factors such as age, education, and prior work experience. For purposes of determining the existence of a severe impairment, 20 C.F.R. § 404.1521 provides as follows:

> (a) Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
>
> (b) Basic work activities. When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs. Examples of these include--
>
> > (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> >
> > (2) Capacities for seeing, hearing, and speaking;
> >
> > (3) Understanding, carrying out, and remembering simple instructions;
> >
> > (4) Use of judgment;
> >
> > (5) Responding appropriately to supervision, co-workers and usual work situations; and
> >
> > (6) Dealing with changes in a routine work setting.

After a review of the record in this case, the court is constrained to conclude that the Commissioner's denial of plaintiff's application for disability insurance benefits is supported by substantial evidence. While the court believes that the medical record clearly establishes that Mrs. Boyd has suffered from a severe musculoskeletal impairment since February 1, 1995, the court must agree that the evidence supports the finding that plaintiff remained capable of performing at least light levels of work activity at all times prior to the termination of her insured status. It follows that the

Commissioner's final decision denying plaintiff's claim for disability insurance benefits must be affirmed.

It seems that Mrs. Boyd injured her back in a work-related accident in February of 1995. She was pregnant at the time and could not undergo appropriate diagnostic testing. After studies were performed several months later, it was determined that plaintiff was suffering from an L4 Pars defect as well as two small herniated discs at L4-5 and L5-S1. Thereafter, Mrs. Boyd underwent conservative treatment, including epidural steroid injections and physical therapy. A repeat MRI in January of 1996 revealed that plaintiff's herniation had resolved. By early 1996, Mrs. Boyd's treating physicians recommended that she return to her regular work activity, though with certain restrictions in the use of her back.

Mrs. Boyd returned to work. However, it seems that her employer did not honor the physical restrictions imposed by her physician. On August 29, 1996, plaintiff's doctor indicated that she could do up to medium levels of work, though with restrictions as to the use of her back. (TR 162). He recommended that plaintiff continue with therapy and pain management measures. On March 30, 1997, Mrs. Boyd's treating physician reported as follows:

> I met with her case manager on 3/20/97. Case manager had some job descriptions that had been selected for Patricia for my approval. One was a job with CFW cellular and I felt that was a perfect job for Patty in that she could do it standing or seated. There was some discussion about whether or not she should be restricted from daylight shift and I see no reason for that restriction. I've approved both job descriptions. The second one was as a security inspector and requires rounds twice during the shift which I think again is perfectly suitable for this patient. I think she can begin either job immediately and would expect that she would be able to easily tolerate either position.

(TR 164).

Mrs. Boyd did not seek regular treatment for her back condition with any great frequency during the years between 1996 and 2006. During that period, she was treated for other problems, including hypothyroidism and hypertension. On April 22, 2006, her family doctor related that she had been experiencing severe pain since the time of her original injury, and that she was requesting additional intervention. (TR 173). Her doctor explained her discontinuation of regular treatment on a misunderstanding as to what medical benefits were still available to her. (TR 173). In any event, and most importantly, an MRI of the lumbar spine in April of 2006 showed only small disc herniations at L4-5 and L5-S1 with no significant nerve root compression, and a mild bulge at L1-2 without mass effect. (TR 184). An orthopaedic evaluation in May of 2006 was not overly remarkable, except for notation of severe limitation in range of motion in the lumbar spine with tenderness in the lower lumbar segments. (TR 166).

As noted by the Administrative Law Judge, Mrs. Boyd's condition markedly worsened some time after the MRI in May of 2006. A CT scan on January 9, 2008 revealed a central broad-based annular tear at L4-5 with central disc extrusion, and a broad-based disc protrusion in angular derangement of L5-S1. Mrs. Boyd underwent a lumbar spinal fusion procedure in March of 2008.

In summary, the medical reports from plaintiff's treating physician in the months immediately after her back injury in January of 1995 reveal that she retained sufficient functional capacity for lighter levels of work activity. While Mrs. Boyd attempted to return to her past work, her employer imposed additional requirements which were inconsistent with the restrictions established by her treating physician. Plaintiff ultimately proved incapable of performing these activities requiring more rigorous use of her back. However, the fact remains that the medical record supports the proposition that Mrs. Boyd retained sufficient functional capacity for some levels of work activity for many years

after her injury. Even assuming that Mrs. Boyd could have performed no more than light work activity, and even assuming that she was disabled for her past relevant work, the medical vocational guidelines direct a determination of not disabled in this case as to all times prior to the date of termination of insured status. See 20 C.F.R. § 404.1569 and Rule 202.20 of Appendix 2 to Subpart P of the Administrative Regulations Part 404. It follows that the Commissioner properly determined that plaintiff is not entitled to disability insurance benefits.

In passing, the court again notes that the Administrative Law Judge's finding of no severe impairment for the period prior to termination of insured status, is simply not tenable under the evidence in this case. As previously noted, plaintiff's treating physicians consistently determined that she was unable to perform a full range of work activity after her back injury in 1995. Her doctor suggested that her work restrictions were permanent. (TR 160). There is no reason to believe that her level of musculoskeletal dysfunction abated during the eight or nine year period when she was not seeking regular treatment for her discomfort. Under 20 C.F.R. § 404.1521, an impairment may be deemed to be not severe only when it does not significantly limit a claimant's physical or mental ability to do basic work activities. In the instant case, Mrs. Boyd has been rendered unable to perform heavier types of work activity because of her work-related back injury. As reflected in the medical reports, her ability to sit, stand, lift, and use her back has been significantly impacted. In such circumstances, there can be no question but that plaintiff has experienced a severe impairment as a result of her work injury. See Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

Nevertheless, while plaintiff has established the existence of a severe impairment during the period covered by her application for disability insurance benefits, the record overwhelmingly establishes that she retained sufficient functional capacity to perform less strenuous work roles

7

throughout the same period. Thus, the court concludes that the Commissioner properly denied plaintiff's application for disability insurance benefits. Stated differently, while the court believes that the Law Judge erred in denying plaintiff's claim at the second level of the sequential disability analysis set forth under 20 C.F.R. § 404.1520(c), the court concludes that plaintiff's claim must fail at the fifth level of the sequential analysis set forth under 20 C.F.R. § 404.1520(g). Contrary to plaintiff's arguments, the court finds no cause for remand of this case to the Commissioner for further consideration.

On appeal to this court, and in addition to the argument concerning the Law Judge's finding of no severe impairment, plaintiff contends that the Law Judge failed to consider medical evidence compiled prior to January 24, 2006. However, the court believes that the Law Judge's opinion evinces consideration of all relevant evidence of record. In any event, as set forth above, the court concludes that the earlier medical record supports a finding that plaintiff was not disabled for less strenuous jobs not involving frequent use of her back. Plaintiff also asserts that she was unable to afford medical treatment during a period of time in the late 1990s and early 2000s, and that the Administrative Law Judge faulted her for not seeking medical help during this period. While it is well settled that a claim for disability insurance benefits may not be denied based on failure to seek and obtain medical treatment because of a lack of funds, see Lovejoy v. Heckler, 790 F.2d 1014, 1017 (4th Cir. 1986), it is clear that the Law Judge did not rely on the absence of medical records in denying plaintiff's claim for disability insurance benefits. Instead, the Law Judge merely cited the lack of medical evidence as one of several factors documenting a gradual worsening of plaintiff's condition. While not dispositive of plaintiff's claim, the gap in the medical record is one of several circumstances in Mrs. Boyd's case which must be considered by the factfinder. The court finds no

basis upon which to conclude that plaintiff's claim was prejudiced because she was unable to afford appropriate medical treatment.

For the reasons stated, the court believes that the Commissioner's denial of plaintiff's claim for disability insurance benefits is supported by substantial evidence. It follows that the Commissioner's final decision in this case must be affirmed. In affirming the Commissioner's final decision, the court does not suggest that Mrs. Boyd was free of all pain, discomfort, and weakness during the period in which she still enjoyed insured status. Indeed, the medical record confirms that she suffered a serious injury in 1995, and that she has continued to experience lower back symptoms ever since. However, it must again be noted that the doctor who treated plaintiff's musculoskeletal impairment specifically found that she remained capable of performing lighter forms of work activity in which she was not expected to use her back to any significant degree. There is every reason to believe that she continued to enjoy such residual functional capacity until the exacerbation of her condition some time after January of 2006. It must be recognized that the inability to do work without any subjective discomfort does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 594-95 (4th Cir. 1996). Once again, it appears to the court that the Administrative Law Judge considered all of the subjective factors reasonably supported by the medical record in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, resolution of conflicts in the evidence is a matter within the province of the Commissioner even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the

Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra. An appropriate judgment and order will be entered this day.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 29th day of December, 2010.

*[signature: Glen Conrad]*
CHIEF UNITED STATES DISTRICT JUDGE